Linda Patrice HAILEY, Appellant,

v.

William B. DORSEY, Sheriff of the City of Williamsburg, Appellee.

No. 77–1634.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 11, 1977.

Decided July 6, 1978.

S. W. Tucker, Richmond, Va. (James W. Benton, Jr., Hill, Tucker & Marsh, Richmond, Va., on brief), for appellant.

K. Marshall Cook, Asst. Atty. Gen. (Anthony F. Troy, Atty. Gen. of Va., Richmond, Va., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

This is an appeal from the denial of a petition for a writ of habeas corpus brought to challenge the legality of a jail sentence given a juvenile offender.

The appellant, Linda Patrice Hailey, was found "not innocent" of assault and battery, on one of her teachers, by the Juvenile and Domestic Relations Court for the County of James City, Virginia. That court entered a judgment in which it found that "the defendant cannot be controlled or induced to lead a correct life by use of the various disciplinary and corrective measures available to the court." Therefore, the court elected to sentence her to jail for ten days, all suspended except for one weekend.[1]

On appeal, the circuit court also found the defendant "not innocent." However, the circuit court, without a finding of record concerning the appellant's amenability to treatment under normal juvenile corrective measures, sentenced her to a jail term of four months, suspending all of the sentence except fifteen days, during which time she was to be released for work and to attend school. The jail sentence imposed by the circuit court was thus greater than the sentence imposed by the juvenile court.

In her petition for a writ of habeas corpus, Miss Hailey does not deny that she was guilty of the crime; such is tacitly admitted; however, she challenges the legality of the jail sentence. Specifically, she

---

1. She was also fined $25.00 and was placed on probation.

asserts that Virginia law did not permit a court to try her as a juvenile, yet sentence her to jail; and she maintains that if the court desired to sentence her to jail, it had to offer her a jury trial.[2] Secondly, she claims that the increase in the sentence by the circuit court was unconstitutional under the ruling of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

■ We turn to the increased sentence by noting that the trial in the circuit court was a trial de novo and not an appeal on the record from the Juvenile and Domestic Relations Court. The circuit court did not review the juvenile court record for error, but, instead, conducted a new trial with a completely fresh determination of the evidence. The statute provided that appeals of juveniles in the circuit court conform to equity practice where evidence is heard ore tenus. Moreover, it provides a right to demand an issue out of chancery which necessarily calls for the intervention of a jury. Va.Code Ann. § 16.1–214.[3] The circuit court could have dismissed the charges, Va.Code Ann. § 16.1–215, and the report required of probation officers in such cases by § 16.1–164 was available to the court only "after the guilt or innocence of the accused has been determined." § 16.1–214. In view of the foregoing, and especially the fact that the circuit court made its own record, we have no hesitation in following the Virginia court in its holding that appellate proceedings under § 16.1–214 are a

trial de novo. *Manns v. Commonwealth*, 213 Va. 322, 191 S.E.2d 810 (1972). It follows that we hold that the award of a greater punishment on trial de novo was not constitutionally impermissible under the holding in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1970).

Appellant also attacks the legality of the jail sentence, claiming that a juvenile cannot be sentenced to jail absent a finding of incorrigibility under Va.Code Ann. § 16.1–177.1.

Admittedly, a jail sentence is not ordinarily a preferable sentence in the case of a juvenile; rather, the juvenile statutes contemplate less harsh remedies, such as probation, with or without supervision, commitment to a state industrial school or the local board of social services, or the like.[4] However, the Virginia statute allows the court, after a determination of guilt, to consider a wide range of dispositional alternatives, including commitment to jail, in choosing the proper and most suitable discipline for the convicted juvenile. Va.Code Ann. § 16.1–177 (1975 Repl.Vol.). If the court believes that the best interests of the child would not be served through the implementation of those milder corrective measures ordinarily invoked for juvenile offenders, the court may, upon a finding that the child could not "be adequately controlled or induced to lead a correct life by use of the various disciplinary and corrective measures available to the court," sentence the child to jail. Va.

**2.** Her claim that she was entitled to a jury trial must be dismissed for failure to exhaust State remedies. She had a fair and adequate opportunity to raise the claims on appeal to the Supreme Court of Virginia, but she did not include in her assignments of error a claim that she was deprived of her right to trial by jury. We do not believe that the failure to submit the question to the Virginia courts is sufficiently explained by the lack of success (denial of appeal) which Hailey's attorney had had with the submission of a similar issue in another case. The grant of an appeal by the Supreme Court of Virginia is discretionary, and, as with the denial of a writ of certiorari, is precedent only in that case. It should not be grounds on which counsel may rely in making a decision to bypass available State remedies. Accordingly, the assignment of error must be denied. Be-

cause of our holding, we do not express an opinion as to whether or not a jury was available in all events on demand, or whether a waiver of trial by jury appearing in the order of the Virginia trial court is effective.

**3.** Amended as § 16.1–296 (1977 Cum.Supp.). All references in the text are to code provisions found in the 1975 Replacement Volume. The juvenile court statutes were amended in 1977, and reference will be made throughout the footnotes to most of the amended versions of the sections as cited in the text. § 16.1–164 is now § 16.1–260, and § 16.1–215 is now § 16.1–297.

**4.** Va.Code Ann. § 16.1–178 (1975 Repl.Vol.), amended by § 16.1–279 E (1977 Cum.Supp.).

Code Ann. § 16.1–177.1 (1975 Repl.Vol.).[5] This decision is made after a finding that the defendant is "not innocent" of the charges against him, and is limited to cases where the juvenile is charged with an offense which would have been a misdemeanor or a felony had he been an adult.[6] Thus, the jail sentence is merely an additional remedial alternative applied, if at all, to incorrigibles who have committed an offense which would be a felony or misdemeanor if they were adult.

Section 16.1–177.1, however, requires the court to find that ordinary juvenile corrective measures are inadequate for controlling the juvenile offender. *Norwood v. City of Richmond*, 203 Va. 886, 128 S.E.2d 425 (1962), held that a conviction and jail sentence awarded a juvenile could not be sustained absent the report to the court mentioned in § 16.1–214 to support a finding of incorrigibility. It might seem to follow that a finding of incorrigibility was required of the circuit court if it wished to "sentence or commit the juvenile offender in accordance with the criminal laws" under § 16.1–177. Here, although the juvenile court made such a finding, the circuit court failed to enter its own similar finding in the record, and this record omission is really the gist of the appellant's complaint.[7] Following *Norwood*, we might be justified in assuming that the circuit court erred in sentencing the appellant to jail without first finding that she was not amenable to treatment under more ordinary juvenile disciplinary measures, although the required report was on hand here, which it was not in *Norwood*, and that was the ground of appeal in that case. *Norwood*, 203 Va. at 889, 128 S.E.2d at 427.

But, assuming the absence of the required finding is error, our inquiry must proceed further. Matters of State law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief. *Chance v. Garrison*, 537 F.2d 1212 (4th Cir. 1976). Therefore, if the error committed by the failure to make the appropriate record finding merely related to a State procedural question, the issue may not be reached in a federal habeas corpus petition unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, at p. 428, 82 S.Ct. 468, at p. 471, 7 L.Ed.2d 417 (1962); *Davis v. United States*, 417 U.S. 333, at p. 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). A nonconstitutional procedural error must somehow be shown to be a violation of the defendant's most fundamental rights, else it does not fall within the scope of 28 U.S.C. § 2254. *Stone v. Powell*, 428 U.S. 465, at p. 477, n. 10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In the absence of such a "fundamental defect which inherently results in a complete miscarriage of justice," which we are of opinion did not occur by the mere failure to make of record the required finding, the failure to comply with the requirements of the Virginia statute, there being claimed only an error in Virginia procedural law, is cognizable in federal habeas corpus proceedings if, and only if, that failure means that the sentencing court had no jurisdiction to sentence the appellant to jail. See *Hill v. United States*, 368 U.S. 424, at p. 428, 82 S.Ct. 468 (1962); *Sunal v. Large*, 332

---

**5.** Amended Va.Code Ann. § 16.1–284 (1977 Cum.Supp.).

**6.** Because the power of the court under § 16.1–177.1 to impose a jail sentence is limited in application to offenses committed by a juvenile which would have been either misdemeanors or felonies had they been committed by an adult, a juvenile who has been accorded juvenile delinquent status for any other reason may not be sentenced to jail.

**7.** Appellant also questions whether the evidence was sufficient to establish that she was incorrigible. The juvenile court found that she was incorrigible, and we cannot say that there is no evidence at all to support that conclusion. While the circuit court failed to make that specific finding, as has been noted, essentially the same evidence was before it. We cannot say the finding is not supported by any evidence at all. *Freeman v. Slayton*, 550 F.2d 909 (4th Cir. 1976), cert. den. 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1977).

U.S. 174, at p. 182, 68 S.Ct. 29, 92 L.Ed. 368 (1947).

Was the failure to make the requisite finding of incorrigibility a jurisdictional error? A review of the Virginia cases presents no easy answer to this question.

A line of decisions, culminating in *Matthews v. Commonwealth,* 216 Va. 358, 218 S.E.2d 538 (1975), suggests that the juvenile statutes must be strictly complied with, and that the failure to do so might deprive the court of "authority to impose a sentence upon the defendant." *Norwood v. City of Richmond,* 203 Va. 886, at p. 891, 128 S.E.2d [425] at 429 (1962); *Peyton v. French,* 207 Va. 73, 147 S.E.2d 739 (1966). Accordingly, at least one federal court has noted that certain failures to comply with the requirements of the juvenile statutes are jurisdictional defects and thus cognizable in a habeas corpus proceeding. *Evans v. Cox,* 327 F.Supp. 1057, 1058 (E.D.Va.1971).

However, the issues of those Virginia cases indicate that we should not rely on them to formulate a per se rule applicable to all instances in which there is not strict compliance with the requirements of a juvenile statute, for, excepting *Norwood,* they involve the juvenile court's transfer of a juvenile to a court of record for criminal proceedings.[8] Original jurisdiction over juvenile offenders is vested exclusively in the Juvenile and Domestic Relations Court, § 16.1–158 (1975 Repl. Vol.), except those cases in which the offender has been transferred to the circuit court for criminal proceedings, § 16.1–176 (1975 Repl. Vol.), or where the circuit court, the offender having been initially charged as an adult, makes the determination permitted by § 16.1–175 and required by § 16.1–176 for transfer by the juvenile court.[9] Thus, if there be a significant defect in the transfer proceeding, the circuit court never gains jurisdiction over the juvenile and therefore has no authority to impose a sentence on the offender. See also *Pruitt v. Peyton,* 209 Va. 532, 165 S.E.2d 288 (1969); *Gogley v. Peyton,* 208 Va. 679, 160 S.E.2d 746 (1968); *Gregory v. Peyton,* 208 Va. 157, 156 S.E.2d 624 (1967), all discussed in *Turner v. Commonwealth,* 216 Va. 666, 222 S.E.2d 517 (1976) (Compton, J., dissenting). *Norwood* involves the same concept; the circuit court obtains authority to proceed with a trial de novo only if the appeal is perfected in compliance with the governing statute. In that case, the juvenile court failed to transmit to the court of record, as required by the statute under which the appeal was taken, the pre-sentence report. Thus, *Norwood,* along with the transfer cases, illustrates the rule that the jurisdiction of the circuit court may depend upon actions by the juvenile court,[10] and, if the juvenile court fails to take a fundamental action required by the statutes, the circuit court never gains jurisdiction over the juvenile offender, or at least loses its authority to proceed.

■ We think that, taken as a whole, the Virginia cases compel strict compliance with the requirements of the juvenile statutes that are not merely procedural. But they do not indicate that the failure to comply with any juvenile statute is a jurisdictional defect and establish no per se rule to that effect. See the dissenting opinion in the *Turner* case. Such a conclusion is supported by the Virginia court's most recent decision in this area, *Turner v. Commonwealth,* 216 Va. 666, 222 S.E.2d 517 (1976).

---

8. The distinction must be kept in mind between "transfer" from the juvenile court to a court of record under § 16.1–176 (1975 Repl. Vol.), where the act charged is a felony, sometimes referred to as being "certified," and the alternate punishment provision of § 16.1–177.1 (1975 Repl. Vol.). The findings required under both those sections are not unalike, although not precisely the same.

9. This jurisdiction was removed by the 1977 amendment. § 16.1–245 (1977 Cum.Supp.).

10. Except where the juvenile was originally charged, by mistake or otherwise, as an adult, then, the circuit court had the option of transferring the case to the juvenile court or of making the appropriate determinations and continuing with the trial of the case. § 16.1–175 (1975 Repl. Vol.). The option of continuing with the trial was removed by the 1977 amendment. § 16.1–245 (1977 Cum.Supp.)

*Turner* not only rejected a rigid approach, but also refused to apply a per se rule in even the limited context of a transfer hearing. In *Turner,* it was held that a defect in the transfer hearing did not, ipso facto, prevent the circuit court from assuming jurisdiction, because, as the court emphasized, the non-compliance with the statute represented a procedural error.

In *Turner* the juvenile was not given, as required by statute,[11] written notice of the transfer hearing and had been tried as a criminal in the circuit court, found guilty of robbery, and sentenced to a term in the penitentiary. While, as noted, he had not been given the necessary written notice of the transfer hearing required by statute, he did have oral notice and did not object to the inadequacy of notice at the hearing, which he, his attorney, and his parents attended. In response to the juvenile's argument on appeal that the circuit court, because of the defect in the transfer hearing, had no jurisdiction to try and sentence him, the Supreme Court of Virginia said:

> "Unquestionably, the juvenile statutes of Virginia require written notice of a transfer hearing. But if the requirement that the notice be in writing is procedural rather than jurisdictional, any departure from that requirement may be cured or waived by the appearance of the necessary parties and a failure to object to inadequacy of notice. We believe the juvenile statutes themselves demonstrate the procedural nature of the written notice requirement."

*Turner,* supra, at p. 668, 222 S.E.2d at p. 519.

█ Thus, waiver not being claimed by the Commonwealth, our task requires us to determine the legislative intent behind the statutory requirement before us, that a finding of incorrigibility precede a sentence to jail. We conclude that the necessary finding of incorrigibility is procedural, rather than a jurisdictional, requirement.

First, there is no question as to the authority of the circuit court to adjudicate the appellant's guilt or innocence. On the contrary, the sole objection is to the authority of the court to sentence the appellant to jail rather than to impose some less severe juvenile discipline. Assuming that the court erred in sentencing Miss Hailey to jail without first making a record finding of incorrigibility, the only question remaining is whether the circuit court, which had jurisdiction to determine her guilt, had obtained jurisdiction to impose the jail sentence until it had formally recited that the appellant could not be benefited by the remedies typically imposed when dealing with a juvenile. We do not believe that the legislature intended to so limit the authority of the sentencing court, but intended to charge that court as to the required findings in the formulation of the remedy best applied to a particular juvenile offender.

The Virginia juvenile justice statutes are obviously designed with the purpose of remedying the juvenile offender's difficulties with social adjustment. Thus, the legislature recognized that the juvenile's problems might cover a wide range, from mischief to murder, and, accordingly, granted the courts "all necessary and incidental powers and authority, whether legal or equitable in their nature" to remedy the maladjusted child's problems. Va.Code Ann. § 16.1–140.[12] Moreover, the legislature has also empowered the circuit court to utilize the full ambit of disciplinary remedies, allowing the court to choose between imposing an adult or juvenile penalty. Va.Code Ann. § 16.1–177.[13]

For these reasons, we consider the statutory requirement of a finding of incorrigibility to be a procedural prerequisite to the exercise of the court's general remedial powers which are granted elsewhere in the

---

11. Va.Code Ann. § 16.1–176(a)(3) (1975 Repl. Vol.), amended by § 16.1–269 A.2 (1977 Cum. Supp.).

12. Amended Va.Code Ann. § 16.1–227 (1977 Cum.Supp.).

13. Amended Va.Code Ann. § 16.1–272 (1977 Cum.Supp.).

**118**

statute, and not a prerequisite to the jurisdiction of the court. Contrary to appellant's assertion, a juvenile is not immune from incarceration in jail. Rather, alternative and less harsh measures are preferred for the juvenile offender, but when the best interests of the child demand such confinement, that is available as an alternate discipline. As the failure of the circuit court to formally record a finding of incorrigibility is a State procedural error in sentencing, there is no ground for habeas corpus relief. *Grundler,* p. 802; Cf. *Brown v. Slayton,* 342 F.Supp. 61 (W.D.Va.1972).[14]

Accordingly, the judgment of the district court is

AFFIRMED.[15]

DONALD RUSSELL, Circuit Judge, dissenting:

I believe that it was mandatory for the Circuit Court to make a finding in this case that the appellant could not "be adequately controlled or induced to lead a correct life by use of the various disciplinary and corrective measures available to the court under the law" before imposing sentence and that the failure to do so invalidated the sentence. I would grant *habeas* relief. *See,* § 16.1–177.1, Code of Virginia, and *Norwood v. City of Richmond* (1962) 203 Va. 886, 128 S.E.2d 425, 428–9.

14. In *Brown,* the court refused to consider a prisoner's complaint that he was incarcerated for a violation of probation when the original sentencing court had never formally entered an order placing him on probation.

15. We are of opinion that appellant's claim that she was sentenced in violation of 42 U.S.C. § 1981 is without merit.