**Danny CHANCE, Appellant,**

v.

**Samuel GARRISON, Warden, Central Prison, Appellee.**

**No. 75–2060.**

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1976.

Decided June 10, 1976.

William J. Cintolo, Revere, Mass. (Gerald Alch, Boston, Mass., on brief), for appellant.

Richard N. League, Asst. Atty. Gen. of N. C., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge, and HADEN, District Judge.*

BOREMAN, Senior Circuit Judge:

In 1970, the appellant, Danny Chance, was indicted on state charges of kidnap-

* Sitting by designation.

ping, rape and murder resulting from the abduction of two persons, one of whom was raped and the other murdered. In March 1971 Chance was tried by a jury in a North Carolina state court, convicted of one count of rape, one count of murder, and two counts of kidnapping. He was sentenced to death. Chance appealed to the Supreme Court of North Carolina which affirmed his conviction, *State v. Chance,* 279 N.C. 643, 185 S.E.2d 227 (1971), and he subsequently sought review of his conviction by the United States Supreme Court which vacated the death sentence and remanded for resentencing. *Chance v. North Carolina,* 408 U.S. 940, 92 S.Ct. 2878, 33 L.Ed.2d 764 (1972). Upon remand, Chance was sentenced to two terms of life imprisonment and two terms of 99 years imprisonment, to be served consecutively.

In December 1974 Chance filed a petition in the United States District Court for a writ of habeas corpus. Chance appeals from that court's denial of his petition. We affirm.

Chance's principal argument is that he was denied due process of law as guaranteed by the Fourteenth Amendment when the trial court permitted the introduction of certain inculpatory statements which he contends were inadmissible under the provisions of section 7A–451(b) and 7A–457(a) of the North Carolina General Statutes because they were obtained in an "in-custody interrogation" at which counsel was not present.[1] On direct appeal, the Supreme

Court of North Carolina considered the admissibility of Chance's statements and held that the state statutes were not violated because "under the facts and circumstances of this case there was no 'in-custody interrogation.'" 185 S.E.2d at 239. In dismissing Chance's petition for habeas corpus, the district court did not reach the question of whether an "in-custody interrogation" occurred, but found that because Chance had effectively waived his right to counsel under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he could not now assert a federal constitutional claim arising out of the failure of the state to provide counsel at an "in-custody interrogation." Without deciding the merits of the district court's findings as to the waiver, we uphold the dismissal of Chance's petition on the ground that no federal question is presented.

 Although no question of his federal *Miranda* rights is raised herein, Chance urges that if his statements were given under circumstances which in the absence of a waiver would constitute an "in-custody interrogation" actionable under *Miranda,* these statements must also be considered as having been obtained in an "in-custody interrogation" as defined by the state statute. He further contends that the finding of the state court that no "in-custody interrogation" occurred was erroneous because recent cases interpreting *Miranda* require a finding that his statements were obtained in an "in-custody interrogation." Thus,

---

1. Section 7A–451 of The General Statutes of North Carolina provides, in pertinent part:

 (a) An indigent person is entitled to services of counsel in the following actions and proceedings:

 (1) Any felony case . . .

 (b) In each of the actions and proceedings enumerated in subsection (a) of this section, entitlement to the services of counsel begins as soon as feasible after the indigent is taken into custody or service is made upon him of the charge, petition, notice or other initiating process. Entitlement continues through any critical stage of the action or proceeding, including, if applicable:

 (1) An in-custody interrogation;

 . . . . .

 N.C.Gen.Stat. § 7A–451 (1969).

At the time of Chance's arrest and trial, section 7A–457(a) of The General Statutes of North Carolina provided, in pertinent part:

 (a) An indigent person who has been informed of his rights under this subchapter may, in writing, waive any right granted by this subchapter, if the court finds of record that at the time of the waiver the indigent person acted with full awareness of his rights and of the consequences of a waiver. In making such a finding, the court shall consider, among other things, such matters as the person's age, education, familiarity with the English language, mental condition, and the complexity of the crime charged. A waiver shall not be allowed in a capital case.

 N.C.Gen.Stat. § 7A–457(a) (1969), *subsequently amended* (Supp.1975).

Chance urges that he was entitled under state statutory law to the presence of counsel when the inculpatory statements were given, and that the failure to accord him his state rights constituted a denial of due process. We do not agree. The standard for determining when an "in-custody interrogation" occurs under the state statute is a question of state law which is not inextricably linked to the evolving federal standard for an "in-custody interrogation" actionable under *Miranda*. Not only has the Supreme Court of North Carolina previously determined that, in the instant case, there was no "in-custody interrogation" under state law but Chance has failed to demonstrate that the state court's interpretation of the state statute infringed upon any federally protected right. Matters of state law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief, *Grundler v. North Carolina*, 283 F.2d 798 (4 Cir. 1960).

 Chance contends further that he was denied a fair trial because (1) the jury was charged on two "felony murder" theories which had no factual basis, and (2) the jury was not instructed on the lesser included offenses of manslaughter and second degree murder although he had presented evidence that he was intoxicated when the crimes were committed. Normally, instructions to the jury in state trials are purely matters of state law and procedure and it is only in circumstances where the instructions impugn fundamental fairness or infringe upon specific constitutional protections that a federal question is presented. *Grundler v. North Carolina, supra* at 802. Here, Chance has failed to demonstrate that the instructions given impugned fundamental fairness. His challenge to the jury charge relates to instructions given with respect to two felony murder theories based upon kidnapping; he argues that the court erred in giving these instructions because there was insufficient evidence presented at trial to permit the jury to find that the kidnappings occurred. We find this argument entirely without merit. Chance was convicted not only of first degree murder but also of the two counts of

kidnapping upon which the felony murder charges were based. Evidence sufficient to prove the substantive offense of kidnapping is sufficient to prove kidnapping as an element of first degree murder under the felony murder rule. Furthermore, evidence of Chance's intoxication did not entitle him to additional instructions as to lesser included offenses. Under North Carolina law, intoxication is relevant only as to premeditation and deliberation, *State v. Hamby,* 276 N.C. 674, 174 S.E.2d 385 (1970), and evidence of premeditation and deliberation is not required as an essential element of proof of a felony murder charge. *State v. Williams,* 284 N.C. 67, 199 S.E.2d 409 (1973); *State v. Thompson,* 280 N.C. 202, 185 S.E.2d 666 (1972).

Accordingly, the judgment of the district court denying habeas corpus relief is affirmed.

*Affirmed.*